**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SUSAN K. TERRY, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | Case No.  09-CV-529-TCK-PJC |
| 7700 ENTERPRISES, LLC, d/b/a ) | |
| DIGICUT SYSTEMS, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 33).

**I.    Background**[1]

Plaintiff Susan K. Terry ("Plaintiff") began her employment with Defendant 7700 Enterprises, LLC d/b/a DigiCut Systems ("DigiCut") on or about July 15, 2007. She was hired by Wes Caves ("Caves"), president and owner of DigiCut, to be his executive administrative assistant. Plaintiff received an initial salary of $37,000 per year in addition to other benefits, including individual health insurance at no cost to her.

Plaintiff asserts that by August 2007, Caves made it apparent that he wanted to have a personal relationship with her. According to Plaintiff, Caves told her that he and a former assistant worked well together and he was hoping for the same type of relationship with her. Caves explained to Plaintiff that he took "good care" of his former assistant by compensating her well and buying her a Rolex watch and a Lexus. (Pl.'s Dep., Ex. D to Def.'s Mot. for Summ. J., at 237:32-25.) It is undisputed that Caves and his former assistant had an affair. Also in August 2007, Plaintiff received

---

[1] The following facts are undisputed or construed in a light most favorable to Plaintiff.

additional employee benefits from Caves, including a $10,000 raise, a credit card for the purchase of gasoline, and additional health insurance for her family at no cost to her.

In September 2007, Caves invited Plaintiff to dinner. According to Plaintiff, she accepted the invitation in order to tell Caves that she was not interested in a personal relationship. Plaintiff testified that at dinner, Caves stated he wanted to talk about "secrets." Believing he was aware of her criminal history, Plaintiff then divulged to Caves that she had previously been arrested for operating a house of prostitution and had been known as the "Heidi Fleiss of Tulsa." (*See id.* at 331:13-333:20.) Plaintiff provided additional information about her criminal history in her deposition, testifying that she owned a massage/tanning parlor called A Touch of Class, where she and other employees provided sexual services to clients in exchange for money during a period of three to four years. This behavior led to her arrest in 1993. In August 1994, Plaintiff pled *nolo contendere* to a misdemeanor count of operating a house of prostitution and was convicted of said count. In addition to discussing her criminal history with Caves at the September 2007 dinner, Plaintiff told Caves she was not interested in having an affair with him.

According to Plaintiff, Caves was unhappy by the outcome of the dinner. Caves suggested to her that perhaps she should move into a position in Human Resources and ignored her for a week thereafter. Plaintiff testified that Caves eventually apologized for his behavior and acknowledged that she was entitled to work in an environment where she was not being "chased around a desk." (*Id.* at 246:23-247:3.) On or around September 20, 2007, Caves gave Plaintiff two checks for $2,500 and told her the checks were for her personal use.

Plaintiff claims that in October 2007, Caves began commenting about her body, frequently sought hugs, and would often "grab[] [her] butt." (*Id.* at 345:5-14.) Plaintiff further claims that in

November 2007, while attending a company dinner, Caves removed his shoes, put his feet on Plaintiff's leg underneath the table, and later attempted to kiss her after walking her to her car. According to Plaintiff, the comments about her body continued in December 2007, and, at this time, Caves also made comments about being in love with her and repeatedly asked to take her shoe shopping. After rejecting his offer to take her shopping, Caves became offended, ignored her for some time, and then eventually apologized. Plaintiff testified that the comments about her body resumed in January 2008 and that Caves repeatedly "touched [her] butt," and, on one occasion, touched her breast. (Pl.'s Aff., Ex. E to Pl.'s Resp. to Def.'s Mot. for Summ. J., at 2.) Plaintiff claims that she then stated "hands up" and directed Caves not to touch her breast. (*Id.*)

Plaintiff further testified that Caves told her he wanted to have sex with her some fifteen to twenty times during her employment with DigiCut. After one such occasion in February 2008, Plaintiff told him that "it would never happen," and Caves responded by stating that he did not like their "arrangement." (*Id.*) Plaintiff claims she then told Caves to stop pursuing her and that she did not want to be his girlfriend. Within a few days, Caves printed out resumes of administrative assistant candidates and left them on the copier. Fearing her job was in jeopardy, Plaintiff then purchased a digital recorder and began recording conversations between her and Caves. In her affidavit, Plaintiff lists approximately fifty comments by Caves that she recorded between February and July 2008. These comments include: "Your pants catch on fire as you walk you're so hot"; "I was so focused on how hot you are I didn't hear a word you said"; "I'm so looking forward to tank tops, short shorts . . . plunging neckline, tank top with no bra, and super short shorts"; "[D]o you think I obsess enough about your butt? [D]o I have to pay to see from here?"; "Can we talk about anything other than business . . . can we talk about your breasts?"; "I would deck you out in shorts

everyday . . . you might find they get shorter and shorter"; "You look really sexy today"; "Did I tell you how hot you are when you take your shoes off?"; and "I haven't given up on chasing you." (*Id.* at 3-5.)[2] In addition to comments such as these, Plaintiff claims that during her employment with DigiCut, Caves put his hand up her skirt approximately ten times and sent her e-mails that she considered to be of a sexual nature.

Between May 16, 2008 and July 1, 2008, Plaintiff exchanged e-mails with Maria Shook ("Shook") of Advance Research Chemicals, Inc. ("ARC"). Prior to beginning employment with DigiCut, Plaintiff rejected an executive assistant position at ARC. During the e-mail exchange between Shook and Plaintiff in 2008, Shook inquired as to whether Plaintiff might be interested in the position again. Plaintiff did not pursue employment with ARC and informed Shook that she was content in her current position.[3]

On or about July 4, 2008, Caves gave Plaintiff a $15,000 pay increase, and, according to Plaintiff, told her that she owed him a kiss each morning in exchange for the raise. A few days later, on July 10, 2008, Plaintiff claims that she "blew up" after Caves tried to "grab [her] butt three times." (*Id.* at 5-6.) On July 21, 2008, Plaintiff had a telephone conversation with her husband where they discussed filing a claim with the Equal Employment Opportunity Commission

---

[2] DigiCut has filed a separate motion in limine, seeking to exclude Plaintiff's recordings from trial, and argues that said recordings should not be considered in ruling on its summary judgment motion because they are likely inadmissible trial evidence. While the admissibility of the actual recordings has not yet been determined by the Court, DigiCut has not moved to exclude Plaintiff's testimony as to conversations between her and Caves, which are the subject of such recordings. The Court therefore finds it proper to consider such testimony for the purposes of ruling on DigiCut's Motion for Summary Judgment.

[3] Plaintiff did not remember her exact words to Shook, but generally agreed that she informed Shook she was pleased with her position at DigiCut. (*See* Pl.'s Dep., Ex. D to Def.'s Mot. for Summ. J., at 310:4-9.)

4

("EEOC"). According to Plaintiff, Caves stood outside her door and listened to the conversation. Plaintiff believes that during said conversation, she stated to her husband that she would "file the EEOC claim today." (Pl.'s Dep., Ex. D to Def.'s Mot. for Summ. J., at 32:20-21.) Plaintiff filed her EEOC claim later in the day on July 21, 2008. The same day, subsequent to Plaintiff's conversation with her husband and the filing of her EEOC claim, Plaintiff's computer was taken down and all of her e-mails were erased. Plaintiff claims she asked Aaron Kirkland ("Kirkland"), manager of the IT department, what was going on and he told her, "I'm real sorry . . . I'm just doing what I'm told." (*Id.* 37:3-7.)

Also on July 21, 2008, Plaintiff recorded a conversation between her and Caves where she told Caves that she liked her job, did not want to put it in jeopardy, but wanted him to stop making advances.[4] Specifically, she stated she was "a tough broad," but that Caves didn't understand how he was making her feel by treating her like "a piece of meat or an object." (Pl.'s Aff., Ex. E to Pl.'s Resp. to Def.'s Mot. for Summ. J., at 6.) She continued to state as follows:

> And I am only so tough, whenever I put my head on my pillow at night that I have to feel good about myself, and I just wanted it to stop. And I don't know how much I could do or can do to let you see that I am a great employee, I work hard, but I also want to be treated in a respectful manner, and I don't think that's too much to ask. I really don't.

(*Id.*) Caves responded by stating: "I'm sitting here saying that I think the trust between the two of us is obviously not there so I'm saying I'd like to discuss how we can unwind it. [You do] what [you] do for someone else and I'll have somebody else here." (*Id.*) Caves told Plaintiff that he wanted to "unwind" the matter reasonably and didn't want to simply tell her she was fired. Caves offered Plaintiff a severance package if they could come to an agreement and stated that he wanted

---

[4] It is unclear from the record as to precisely when on July 21, 2008 this conversation occurred.

to resolve the matter amicably. Plaintiff responded that she would think about it and discuss it with him the next day. The next morning, on July 22, 2008, Plaintiff told Caves that she was not interested in a severance package and asked if she was fired. Caves responded that she was not fired, and Plaintiff returned to work.

On August 11, 2008, Caves asked Kirkland to replace Plaintiff's laptop computer with a desktop. The same day, Plaintiff sent an e-mail to Misty Kelly, a former DigiCut employee, which stated as follows:

> Yea, I am still [at DigiCut] for now. I am looking for a new job and I was really wanting Wes to fire me . . . it would help my case. He took away my laptop today and they are giving me a desktop. I'm Devastated . . . truly ;) I really hope the EEOC get's [sic] moving so we can get this resolved.

(8/11/08 E-mail, Ex. Q to Def.'s Mot. for Summ. J.) A few days later, on August 15, 2008, Caves sent an e-mail to Plaintiff, informing her that the company would no longer be purchasing gas for her vehicle and that she should use a company vehicle if she needed to drive for company business. (*See* 8/15/08 E-mail, Ex. T to Pl.'s Resp. to Def.'s Mot. for Summ. J.) In mid-September 2008, Caves directed Kirkland to suspend Plaintiff's access to the internet. Caves testified that he did this because an internal investigation into the company's computer system revealed that Plaintiff utilized the internet more than any other employee. On or about October 29, 2008, Plaintiff's online banking access to the company's accounts was disabled. Caves testified that he did not recall directing the bank to block Plaintiff's access.

On November 13 and 14, 2008, DigiCut eliminated nineteen employees as part of a company-wide layoff. Plaintiff was included in this lay-off and was terminated on November 14, 2008. DigiCut contends that the elimination of Plaintiff's position was necessary because DigiCut

6

was experiencing financial problems in conjunction with the decline in the automobile industry. Plaintiff's position remained open until September 10, 2009.

Plaintiff thereafter filed suit against DigiCut, asserting claims for: (1) hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et al.*, ("Title VII"); (2) retaliation in violation of Title VII for allegedly adverse actions before termination ("pre-termination retaliation claim"); (3) retaliation in violation of Title VII based on her termination ("retaliatory discharge claim"); and (4) wrongful discharge in violation of Oklahoma public policy pursuant to *Burk v. K-Mart Corporation*, 770 P.2d 24, 29 (Okla. 1989) ("*Burk* tort"). DigiCut moves for summary judgment as to all claims except for Plaintiff's pre-termination retaliation claim.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.    Hostile Work Environment Claim

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

7

. . . sex." 42 U.S.C. § 2000e-2(a)(1). "This statutory provision prohibits subjecting an employee to a hostile work environment." *Dick v. Phone Directories Co., Inc.,* 397 F.3d 1256, 1262-63 (10th Cir. 2005) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). To establish a sexually hostile work environment, a plaintiff must demonstrate: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007); *Dick*, 397 F.3d at 1263.

### A. Whether Plaintiff Subjectively Perceived Caves' Conduct as So Severe or Pervasive as to Alter a Term, Condition, or Privilege of Plaintiff's Employment and Create an Abusive Working Environment

DigiCut first argues that summary judgment is appropriate as to Plaintiff's hostile work environment claim because she is unable to prove the fourth element of her claim – namely, that Caves' conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment. "The Supreme Court has concluded that, for the purposes of this [e]lement, the conduct in question must be judged by both an objective and a subjective standard – the conduct must be 'severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive,' and the victim must 'subjectively perceive th[at] environment to be abusive.'" *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1023 (10th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Further, "in determining whether a work environment is hostile or abusive, all of the circumstances of the case must be examined, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct

unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted." *Harrison*, 248 F.3d at 1023-24 (citing *Harris*, 510 U.S. at 23).

DigiCut argues Plaintiff is unable to sufficiently demonstrate that she reasonably perceived Caves' conduct to be hostile or abusive. DigiCut points to Plaintiff's sexual and criminal history, contending that her actions in operating a house of prostitution establish she would not have been offended by Caves' conduct, as "Plaintiff herself engaged in much more sexually inappropriate behavior than that she now claims offends her." (Def.'s Mot. for Summ. J. 22.) In support of this argument, DigiCut cites to courts that granted summary judgment on a plaintiff's hostile work environment claim where the plaintiff used offensive language or dressed provocatively. (*See id.* at 21.)

The Court disagrees with the main contention of DigiCut's argument – namely, that because of Plaintiff's sexual and criminal history, she is unable to demonstrate that she was offended by the conduct at issue. Taken to its logical extreme, DigiCut's argument would bar the assertion of many meritorious hostile work environment claims merely based on a plaintiff's sexual history. In this case, Plaintiff's arrest and conviction occurred approximately fourteen years before she began working for DigiCut, and the Court finds no basis for concluding that her illegal conduct at that time has any bearing on her subjective evaluation of Caves' conduct years later. Further, as stated by Plaintiff, "[i]n or about 2000, [she] turned her life over to Christ [and] [s]ince that time [s]he [has been] a committed Christian." (Pl.'s Aff., Ex. E to Pl.'s Resp. to Def.'s Mot. for Summ. J.) Plaintiff therefore contends that, at the time she was employed at DigiCut, she was not the person she was in her "prior life as the so-called 'Heidi Fleiss' of Tulsa." (Pl.'s Resp. to Def.'s Mot. for Summ. J. 2.) Stated simply, Plaintiff's subjective perception of Caves' conduct involves questions of fact that are best left for the jury and are not appropriate for summary judgment disposition. *See O'Shea v.*

*Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1097-98 (10th Cir. 1999) (noting that the "severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact") (internal quotations and citations omitted).

Further, the cases cited by DigiCut are easily distinguishable, as they all involved a plaintiff who engaged in some sort of offensive conduct *in the workplace*. *See Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 966 (8th Cir. 1999) (finding employee failed to demonstrate conduct at issue was "unwelcome" because "plaintiff engaged in behavior similar to that which she claimed was unwelcome and offensive," including yelling at co-workers and using foul language in the workplace); *Mangrum v. Republic Indus., Inc.,* 260 F. Supp. 2d 1229, 1252 (N.D. Ga. 2003) (finding plaintiff could not show conduct at issue was unwelcome when she "participated in and, in some instances, initiated inappropriate language and activity at [the workplace]"); *Pittman v. Cont'l Airlines, Inc.,* 35 F. Supp. 2d 434, 442 (E.D. Pa. 1999) (finding plaintiff could not demonstrate fourth element of hostile work environment claim when plaintiff engaged in banter among employees, flirted with employees at work, and asked an employee if he was a homosexual); *Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1547 (S.D. Fla. 1995) (finding plaintiff had not demonstrated that she subjectively perceived conduct as abusive when plaintiff participated in name-calling, used vulgarities, attempted to pull down a male co-worker's pants, and bragged to co-workers about her sexual activities at the workplace); *Marshall v. Nelson Elec.*, 766 F. Supp. 1018, 1023, 1041 (N.D. Okla. 1991) (finding work atmosphere was not unwelcome or offensive to plaintiff when she was a leading participant in the sexually-charged workplace, as she used "dirty talk" in the workplace and asked co-workers about their sexual activities); *Tindall v. Hous. Auth. of Fort Smith*, 762 F. Supp. 259, 263 (W.D. Ark. 1991) (concluding plaintiff was not offended by conduct at issue because plaintiff acted like "one of the boys and freely joined in sexual jokes with the men"

10

at the workplace). In contrast, DigiCut does not maintain that Plaintiff acted offensively or provocatively at the workplace, so as to make these cases similar to the one at hand. Rather, DigiCut focuses on Plaintiff's conduct fourteen years prior to her employment with DigiCut. The Court therefore declines to grant summary judgment on this basis.

### B. Whether Caves' Conduct was "Unwelcome"

Second, DigiCut argues Plaintiff is unable to demonstrate that she was subject to "unwelcome" harassment, as is required by the second element of her hostile work environment claim. The arguments asserted by DigiCut largely overlap those outlined above. Specifically, DigiCut again focuses on Plaintiff's criminal and sexual history, contending that because Plaintiff "provide[d] sexual services for compensation on a regular basis for at least three (3) to four (4) years," "was subjected to a plethora of vulgar comments, had men she did not know grabbing her breasts and other private areas, and performed sexual acts for money," Plaintiff cannot prove that the conduct at issue is unwelcome. The Court rejects this argument for the reasons outlined above. *See supra* Section III.A.[5]

---

[5] DigiCut cites to *Burns v. McGregor Electronic Industries*, 807 F. Supp. 506 (N.D. Iowa 1992), in support of its argument that Plaintiff is unable to demonstrate that Caves' conduct was "unwelcome" given her sexual and criminal history. Specifically, DigiCut cites to the portion of *Burns* wherein the court reasoned that plaintiff was not offended by the conduct in question in light of plaintiff's personal history, "pierced, bejeweled nipples," tattoo, and "willingness to display her nude body to the public in Easy Rider publications." (Def.'s Mot. for Summ. J. 24 (citing *Burns*, 807 F. Supp. at 508-510).) However, fatal to DigiCut's reliance on *Burns* is the explicit rejection of this reasoning on appeal by the Eighth Circuit – a fact notably absent from Digicut's discussion of *Burns*. Specifically, the Eighth Circuit overruled the district court's opinion, finding that plaintiff's "choice to pose nude for a magazine outside work hours [wa]s not material to the issue of whether plaintiff found her employer's work-related conduct offensive." *Burns v. McGregor Elec. Indus., Inc.*, 989 F.2d 959, 963 (8th Cir. 1993). The court pointed out that the case before it was not one where plaintiff "posed in provocative and suggestive ways *at work*." *Id.* (emphasis added). Rather, the court held that plaintiff's "private life, regardless how reprehensible . . ., did not provide lawful acquiescence to unwanted sexual advances at her work place by her employer." *Id.* Therefore, *Burns* actually supports this

11

DigiCut also argues that Plaintiff cannot demonstrate that Caves' conduct was "unwelcome" because she worked for Caves for over a year until she filed an EEOC charge and did not accept an offer of employment at ARC. The Court finds that these facts, standing alone, are inadequate to warrant summary judgment on Plaintiff's hostile work environment claim. The timing of Plaintiff's EEOC charge and her decision to remain at DigiCut are not dispositive of whether she found Caves' conduct unwelcome. Accordingly, the Court denies DigiCut's Motion for Summary Judgment as to Plaintiff's hostile work environment claim.

## IV. Retaliation Claims

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Where a plaintiff seeks to prove a Title VII retaliation claim through indirect or circumstantial evidence, the burden-shifting analysis of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies." *Pinkerton v. Colo. Dept. of Trans.*, 563 F.3d 1052, 1064 (10th Cir. 2009). "To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.* (citations omitted). "Once the plaintiff has made out a prima facie case, the employer must 'articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (citing *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004)). If the employer is able to articulate a legitimate reason for the action, the plaintiff must

---

Court's rejection of DigiCut's argument and DigiCut's reliance on this case is misplaced.

then demonstrate that the employer's asserted reasons are pretextual. *Pinkerton*, 563 F.3d at 1064.

In this case, Plaintiff brings two claims of retaliation – a pre-termination retaliation claim, (Compl. ¶¶ 29-32), and a retaliatory discharge claim, (*id.* ¶¶ 33-36). DigiCut moves for summary judgment as to Plaintiff's claim for retaliatory discharge, arguing that (1) Plaintiff is unable to make a prima facie case of retaliation, and (2) Plaintiff cannot demonstrate the necessary pretext.[6]

### A.     Prima Facie Case of Retaliation

DigiCut first maintains that Plaintiff is unable to make a prima facie case of retaliation because she cannot establish that she engaged in protected opposition to Title VII discrimination. DigiCut provides no supporting law or argument to buttress this conclusory statement, however. Because it is well established that the filing of an EEOC claim constitutes protected opposition to discrimination, the Court rejects DigiCut's first argument. *See Anderson v. Coors Brewing Co.*, 181

---

[6] In its reply brief, DigiCut additionally seeks summary judgment as to Plaintiff's pre-termination retaliation claim. (*See* Def.'s Reply in Support of Mot. for Summ. J. 17 (arguing "[s]ummary judgment should be granted on *both* Plaintiff's pre-termination retaliation claim and her retaliation claim based on the termination of her employment as part of DigiCut's layoff") (emphasis added).) However, because this ground for summary judgment was not included in DigiCut's Motion for Summary Judgment, (*see* Def.'s Mot. for Summ. J. 25-26 (only providing argument relating to retaliatory discharge claim and failing to include any mention of pre-termination retaliation claim)), it is not properly before the Court, and the Court will not consider same. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."); *Townsend v. BG-Meridian, Inc.*, No. CIV-04-1162-F, 2005 WL 2978899, at *3 (W.D. Okla. Nov. 7, 2005) ("The Court declines to consider new grounds for summary judgment raised for the first time in the defendants' reply brief. Such issues are not properly before the Court where, as here, the defendants could and should have presented them previously."); *Scott v. Hutchinson Hosp.*, 959 F. Supp. 1351, 1358 n. 4 (D. Kan. 1997) ("[Defendant's] reply brief can be read as asserting additional ground for summary judgment . . . [Defendant] did not raise this argument in its motion for summary judgment and the court will not consider it."); *Allen v. Miami Cnty. Emergency Med. Serv.*, No. 95-1149-JTM, 1997 WL 624864, at *10 (D. Kan. Sep. 15, 1997) ("The court will not consider a ground for summary judgment raised for the first time in a reply brief.").

F.3d 1171, 1178 (10th Cir. 1999) ("By filing an EEOC claim, Plaintiff engaged in protected activity.").

Second, DigiCut argues Plaintiff cannot establish a causal connection between the filing of her EEOC claim and her termination. Again, DigiCut provides little support for this assertion, merely arguing, without any supporting citations, that the elimination of Plaintiff's position was not the result of her EEOC claim, but was instead the result of "the financial circumstances of the automobile industry." (Def.'s Mot. for Summ. J. at 26.) The Court is unpersuaded by DigiCut's scant argument. Although not necessarily determinative of a causal connection between Plaintiff's EEOC claim and her termination, the Court finds that Caves' July, 21, 2008 statements, made the same day Plaintiff filed her EEOC claim, demonstrate the existence of a genuine issue of material fact as to the causal connection element. It was at this time that Caves told Plaintiff he wanted to "unwind" their situation and stated: "[You do] what [you] do for someone else and I'll have somebody else here." (Pl.'s Aff., Ex. E to Pl.'s Resp. to Def.'s Mot. for Summ. J., at 6.) He also offered her severance in an attempt to resolve things "amicably." The Court finds that these statements, discussing the end of Plaintiff's employment with DigiCut on the same day she filed her EEOC claim, cast sufficient doubt on DigiCut's conclusory assertion that her subsequent termination had nothing to do with the filing of her EEOC claim. The Court is therefore unwilling to grant summary judgment on this basis.

**B.     Pretext**

In order to demonstrate pretext, a plaintiff must produce evidence that its employer's non-discriminatory reason is "unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). This burden can be met with "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder could rationally find them unworthy of credence." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quotation omitted). DigiCut argues that Plaintiff cannot establish that its asserted reason for her termination – namely, that her position was eliminated in conjunction with a company-wide layoff due to financial problems – is pretext for discrimination.

The Court disagrees and finds that Plaintiff has put forth sufficient evidence to demonstrate pretext. Specifically, Plaintiff cites to Caves' July 21, 2008 statements, outlined above, wherein Caves discussed ending Plaintiff's employment with DigiCut on the same day that she filed her EEOC claim. Plaintiff also points to the fact that subsequent to the filing of her EEOC claim, Caves took adverse actions against her, including suspending her internet access, taking away her laptop computer, and rescinding her gas card. Finally, Plaintiff notes that despite DigiCut's assertion of financial trouble, Plaintiff was given a $15,000 raise two weeks prior to the filing of her EEOC claim. Analyzing this evidence as a whole, the Court concludes that it is sufficient to give rise to an inference of pretext and to permit a jury to find that DigiCut's proffered reason was not the real reason for Plaintiff's termination. The Court therefore finds Plaintiff has satisfied her burden of showing pretext and denies DigiCut's motion for summary judgment on Plaintiff's retaliatory discharge claim.

## V.   *Burk* Tort Claim

DigiCut argues that because Plaintiff's hostile work environment and retaliation claims fail, Plaintiff's *Burk* tort claim should be dismissed as well. *See Brown v. Bd. of Regents for Okla. Agric. and Mechan. Coll. for Langston Univ.*, 353 Fed. Appx. 169, 173 (10th Cir. Nov. 30, 2009) ("This court has on numerous occasions recognized that [insufficient proof to oppose summary judgment] is equally dispositive of both federal and *Burk* discrimination claims."). However, as outlined

15

above, the Court does not find summary judgment appropriate as to Plaintiff's Title VII claims for hostile work environment and retaliation and therefore declines to grant summary judgment as to Plaintiff's *Burk* tort claim on this basis.

## VI.     Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 33) is DENIED.

**IT IS SO ORDERED THIS 27th day of December, 2010.**

_____
**TERENCE C. KERN
UNITED STATES DISTRICT JUDGE**